In the Matter of J. ARTHUR SEIDMAN (Formerly JOSEPH ARTHUR SEIDMAN), an Attorney, Respondent.

First Department, March 10, 1930.

*Isidor J. Kresel* of counsel [*Harold I. T. Schnurer* and *Bernard Hershkopf* with him on the brief], for the petitioners.

*Herbert C. Smyth* of counsel [*John Winans* and *Roderic Wellman* with him on the brief; *William Klein*, attorney], for the respondent.

DOWLING, P. J. The respondent was admitted to practice as an attorney and counselor at law by the Appellate Division of the Supreme Court, First Department, on November 5, 1913.

The charges preferred against him by the petition herein are twofold:

(1) Solicitation of negligence cases.

(2) Withholding of funds in infants' actions.

The matter was referred to a referee whose report is now before us for confirmation. The learned referee in a full, careful and eminently fair report has found the respondent not guilty of the second charges; but under the first charge has found him guilty of solicitation of one negligence case in 1923, eight in 1925, four in 1926, one in 1927. He acquitted the respondent in the other twelve cases in which complaint was made of his activities.

(1) As to the one case in which the referee has found respondent guilty of participation in soliciting business in 1923, the record satisfies us that Christian Gramlich (now deceased) instructed the disinterested witness Edward Jung (as he has testified) to look up respondent's number in the telephone directory and in Jung's hearing Gramlich asked respondent to see him at once with a view

of taking charge of the case. It further appears that Christian Gramlich had been accustomed to call at respondent's office to obtain orders for printing. We do not think respondent has been proved guilty of soliciting in this transaction, which arose in 1923.

(2) As to the transactions in 1925, we think the charge in the Carini case is not proved as it rests upon the uncorroborated testimony of Gondolfo Carini, whose claim that he had received only thirty-five dollars out of the settlement of one hundred dollars was demonstrated to be false and his testimony to be unworthy of belief, for it was established conclusively that he had in fact received sixty-five dollars.

(3) In the case of Francis McBride, an infant, it satisfactorily appears that his grandmother had theretofore retained respondent as her attorney in an action for damages then pending in his office; that she had telephoned to respondent's office stating that her grandson was injured and that she wanted respondent to represent him and what followed was the result of that call.

(4) In the case of William A. Coakley, it is clearly established that there was no solicitation of his case by respondent, but that he was recommended to Coakley by Walter Carr, the delegate and business agent of the International Longshoremen's Association; that such recommendation was in the line of his duty as walking delegate; that he knew both Coakley and respondent; and that he called up respondent's office on the telephone, told the latter's employee that one of his men had been injured, gave Coakley's name and address and asked that respondent take care of the case. What followed was the result of this action by Carr and no improper act by respondent is proved.

(5) In the case of Robert Henry, his testimony is so confused and contradictory that no finding adverse to respondent could be based on it even if it were not contradicted as it was. At one time he said he had written a postal card to the lawyer asking him to come and see him; then he said he could not write as his right arm was injured and useless; then he said his son wrote for him and perhaps wrote the postal card in this instance.

(6) As to the case of Anna Kovacs, her grievance as to respondent seems to be due to the unsuccessful outcome of trial of her action. Her testimony was that she originally was solicited to give her case to a lawyer named Sidney Simon, and after a repetition of this she finally said it was Seidman. Her testimony is met by proof that her son-in-law, an attorney for an insurance company and known to respondent, had called up his office and said his mother-in-law had been injured in an accident and had retained another lawyer but was dissatisfied with his handling of the case

and wanted respondent to take the matter over and represent her. The lawyer she had originally retained was neither Simon nor Seidman, but one Rothbard. This is amply proven and is corroborated fully by the reputable member of the bar who tried the case, and who said that in preparation for the trial, following his usual practice and anticipating cross-examination, he asked her to state how she came to retain respondent, whereupon she told him she had originally retained another lawyer; that her prospective (and since) son-in-law had recommended that she discharge her lawyer and retain respondent; that the son-in-law promised to get in touch with respondent and have a representative call on her and that she first heard of respondent through her son-in-law. The learned referee himself says in his report: " The witness Kovacs was not entirely satisfactory, she appeared irritable, likely to be inaccurate and still grieved over the dismissal of her case."

As to the cases complained of in the year 1926 we are satisfied (7) that the case of Florence McIlvaine, an infant, was referred to respondent by his personal friend Alderman O'Kane and was not the result of solicitation.

(8) In the case of Albert Emmons, the case was recommended to respondent's office by Frank S. Butler, the proprietor of a restaurant where Emmons took his meals and did odd jobs. The accident occurred in front of the restaurant and was witnessed by Butler, who carried Emmons into the restaurant and was asked by him to get the lawyer for him. Butler testified that he called up respondent's office next morning and asked them to send a representative to see Emmons, who a day to two later reported to Butler: " I have seen that lawyer and everything is O. K."

This leaves only six cases in which the evidence may fairly be said to sustain the charges of solicitation. They are those of Louis Borten, Thomas Bonvino and Edward R. Ferguson in 1925, Joseph Keneally in 1926 and Julius Pharao in 1927. In some of these cases the testimony for petitioners is weak, but respondent's witnesses have not satisfactorily met it.

The learned referee has reported that respondent occupies a responsible and honorable position in the community and shows evidence of public spirit and respect and has earned by his efforts an enviable position and standing; he finds no instance of any sinister activities on his part, no instance of his presenting a fictitious claim and no instance in which it may be said he wronged a client or consciously withheld any money to which he was not entitled; that his clients seem to have been well satisfied and properly served. There is no suggestion of any division of fees

with those who solicited retainers, nor of any other unprofessional practices. There is no proof directly connecting respondent with any of the cases of solicitation which we have found to have existed. He paid no commission or gratuity therefor. Nothing is shown which should have given him cause to suspect business was being improperly solicited for him, and we do not think six cases so obtained for him by solicitation in a period of five years are enough to constitute a practice and to make him chargeable as a matter of law with notice of the doings of his employees.

The proceedings should be dismissed.

MERRELL, FINCH, McAVOY and PROSKAUER, JJ., concur.

Proceedings dismissed.